IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,       : CRIMINAL INDICTMENT
                                : 1:05-CR-254-3 (JTC)
          v.                    :
                                :
IVAN DEJESUS CHAPA,             :
Defendant.                      :

**GOVERNMENT'S SECONDRESPONSE TO DEFENDANT'S CLAIMS UNDER <u>PADILLA
V. KENTUCKY</u> AS PRESENTED IN HIS MOTION TO VACATE, SET ASIDE OR
CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

COMES NOW the United States of America, by Sally Quillian
Yates, United States Attorney, Northern District of Georgia, and
Cassandra J. Schansman, Assistant United States Attorney, Northern
District of Georgia, and hereby files the Government's Second
response to Defendant's Motion to Vacate, Set Aside or Correct
Sentence Pursuant to 28 U.S.C. § 2255, specifically addressing the
Supreme Court's recent holdings in <u>Padilla v. Kentucky</u>, 130 S. Ct.
1473 (March 31, 2010).  All of Defendant Chapa's Motions should be
denied, for the reasons explained in this Response.

<u>BACKGROUND</u>

On July 12, 2005, a federal grand jury sitting in the Northern
District of Georgia returned an indictment against the defendant,
Ivan De Jesus Chapa, and others.  (Doc. 1).  Chapa was charged with
conspiring to possess with the intent to distribute at least five
(5) kilograms of cocaine, in violation of Title 21, United States
Code, Section 846 and 841(b)(1)(A)(iii); aiding and abetting the
possession and intentional distribution of at least five (5)

kilograms of cocaine in violation of Title 21, United States Code,

Section 841(a)(1) and 841(b)(1)(A)(iii); and aiding and abetting the distribution of at least fifty (50) grams of cocaine base in violation of 841(a)(1) and 841(b)(1)(A)(iii). (Id.)

On May 9, 2006, Chapa entered into a negotiated plea of guilty to Count One of the indictment. (Doc. 86). Chapa was sentenced on October 14, 2008, to a custodial sentence of 148 months, to be followed by five years of supervised release. (Doc. 212). During the course of his sentencing, the District Court assessed Chapa with a role enhancement, which served to increase his total offense level by two levels. (Doc. 247).

Chapa filed a timely notice of appeal of his sentence on October 22, 2008. (Doc. 216). However, his appeal was not certified to the Eleventh Circuit until October of 2009. (Docs. 248, 249). The Government filed a Motion to Dismiss Chapa's appeal based on the valid appeal waiver contained within Chapa's plea agreement, which was granted by the Eleventh Circuit on December 11, 2009. (Doc. 250). Chapa did not file a petition for a writ of certiorari; therefore, his sentence became final on March 11, 2010, 90 days from the date of the Eleventh Circuit's order.

Beginning on or about March 4, 2010, Chapa wrote a series of letters to this Court requesting relief. (Docs. 251, 257, 262, 264, 267, 270, 272). On March 12, 2010, the Court ordered the

Government to respond to Chapa's requests. (Doc. 254). The
Government filed its response on March 19, 2010, wherein the
Government argued Chapa's correspondence should be construed as a
motion to vacate sentence pursuant to 28 U.S.C. § 2255 and, as
such, Chapa had waived his right to challenge his sentence. (Doc.
255). In support of this the Government noted that Chapa had
waived his right to collaterally attack his sentence. Moreover,
Chapa had also filed a direct appeal with the Eleventh Circuit,
wherein the COurt affirmed the validity of Chapa's waiver and
summarily dismissed his appeal on that basis. (Docs. 216, 250,
255).

Subsequent to the Government's response, but prior to this
Court's ruling on the initial § 2255 motion, Chapa filed three
supplemental responses with this Court. (Docs. 262, 264, 267).
The effect of all of these responses was to add an ineffective
assistance of counsel claim on the ground that his lawyer
misadvised him of the potential immigration consequences before he
entered his guilty plea, as discussed in the Supreme Court case
Padilla v. Kentucky, 130 S. Ct. 1473 (March 31, 2010).

In Padilla, the Supreme Court held that, when the law is not
straightforward as to whether a non-citizen defendant's guilty plea
will result in deportation, a criminal defense attorney may provide
constitutionally deficient performance in discharging his
obligations under the Sixth Amendment if he fails to advise the

3

defendant of the risk of adverse immigration consequences.   <u>Id.</u> at 1481-1484.   Chapa asserts in his Motion that his counsel, Richard Alamia, advised him in connection with his entry of a guilty plea that he need not worry about his immigration status, (Doc. 267-3), and that Mr. Alamia informed Chapa he would not be deported from the United States because Chapa had lived in the United States for most of his life.  (Docs. 262-2, 267-3).   Further, Chapa alleges that Mr. Alamia informed him that in any effort to remove Chapa from the United States, Mr. Alamia would represent him, (<u>id.</u>), and that Mr. Alamia affirmatively misrepresented the effect that the guilty plea would have on Chapa's status. (<u>Id.</u>)  Chapa argues that these facts require that he be granted an evidentiary hearing and that his conviction be vacated pursuant to <u>Padilla</u>.

All of Chapa's letters were submitted to this Court as a Motion to Vacate Sentence under § 2255 on June 18, 2010.  (Doc. 267).   On July 23, 2010, this Court ordered the Government to respond to Chapa's newly raised arguments regarding the holding from <u>Padilla</u>.   On July 29, 2010, this Court filed an order informing Chapa of its intent to construe his letters as a Motion to Vacate His Sentence pursuant to 28 U.S.C. § 2255.  (Doc. 270). On August 9, 2010, Chapa filed a letter in response to the Court's July 29th order stating that he was not withdrawing his motion and requesting that his letters be construed as a Motion to Vacate His Sentence pursuant to 28 U.S.C. § 2255.  The Government now responds

4

to Chapa's § 2255 claim and, consistent with the position adopted by the Department of Justice, urges this Court to conclude that Chapa's <u>Padilla</u> claim is not retroactively applicable to cases on collateral review, and therefore, Chapa's §2255 claims should be denied.

**<u>ARGUMENT AND AUTHORITY</u>**

**I.   AS PREVIOUSLY ARGUED, CHAPA HAS WAIVED HIS RIGHT TO COLLATERALLY ATTACK HIS SENTENCE AND, ADDITIONALLY, THE ENFORCEABILITY OF THE WAIVER HAS BEEN DECIDED IN A PREVIOUS APPEAL; THUS, CHAPA'S CLAIMS ARE WAIVED.**

The Government reiterates its previous arguments as outlined in its Response to Defendant's Correspondence Alleging Sentencing Error as filed on March 19, 2010.  (Doc. 255).  Specifically, the Government submits that, to the extent Defendant's letter is construed as a § 2255 motion, such motion should be denied in its entirety because he has waived his right to collaterally attack his sentence.  (<u>Id.</u>)  Moreover, the Eleventh Circuit affirmed the validity of Chapa's appeal waiver when he previously filed a direct appeal of his sentence. (Docs. 248-50).  Pursuant to that appeal, the Eleventh Circuit summarily dismissed his appeal, based upon Chapa's valid and enforceable appeal waiver. (Doc. 250).  For this reason, Chapa's § 2255 motion should be denied.

**II.   <u>PADILLA V. KENTUCKY</u> DOES NOT APPLY TO CHAPA'S § 2255 MOTION BECAUSE THE RIGHT RECOGNIZED IN <u>PADILLA</u> IS NOT RETROACTIVELY APPLICABLE TO CASES ON COLLATERAL REVIEW.**

The Government having addressed Chapa's other claims in its

5

previous response, (_see_ Doc. 255), the only question remaining from Chapa's § 2255 pleadings is whether the Padilla claim he wishes to present consists of a "right [which] has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," thereby allowing him to vacate his plea and sentence.  Although the Supreme Court authority in Padilla relied upon by Chapa is fairly recent, several district courts have concluded that Padilla does not create a "newly recognized" right that is retroactively applicable to cases on collateral review. United States v. Guzman-Garcia, No. CR F 06-0390 LJO, 2010 WL 1791247, at *2 (E.D. Cal. May 3, 2010) ("Padilla did not newly recognize a right upon which defendant may rely to reset the running of the limitations period given that Padilla was decided after defendant's section 2255 motion."); _see also_ United States v. Millan, Nos. 3:06cr458/RV, 3:10cv165/RV/MD, 2010 WL 2557699, at *1 (N.D. Fla. May 24, 2010) ("This does not appear to be a 'newly recognized' right. Rather, the seminal case of Strickland[1] ... provides the underlying constitutional basis for the court's decision) (citing Guzman-Garcia); _see also_ Haddad v. United States, Civil No. 07-12540, 2010 WL 2884645, at *6 (E.D. Mich. July 20, 2010) ("it is unlikely that Padilla will be made retroactive to convictions under collateral attack").  But _see_ United States v. Chaidez, — F. Supp. 2d —, —, 2010 WL 3184150, at *6 (N.D. Ill. Aug.

---

[1] Strickland v. Washington, 466 U.S. 668 (1984)

11, 2010) (finding <u>Padilla</u> to apply retroactively); <u>United States</u> <u>v. Hubenig</u>, No. 6:03-mj-040, 2010 WL 2650625, at *8 (E.D. Cal. July 1, 2010). The cases that conclude that <u>Padilla</u> is not retroactively applicable reach the correct answer and this reasoning should be adopted by this Court in denying Chapa's Motion, for the reasons that follow.

**A.   Summary of Retroactivity Analysis Under <u>Teague</u>**

The starting point for a retroactivity analysis is <u>Teague v. Lane</u>, 489 U.S. 288 (1989). <u>Teague's</u> general principle is that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." <u>Id.</u> at 310 (plurality opinion). "Under the <u>Teague</u> framework, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." <u>Whorton v. Bockting</u>, 549 U.S. 406, 416 (2007). This general bar on retroactivity reflects a recognition that "application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system." <u>Teague</u>, 489 U.S. at 309. Chapa's conviction and sentence became final on March 11, 2010, 90 days from the date of the Eleventh Circuit's order on his direct appeal, prior to the Supreme Court's <u>Padilla</u> decision which was handed down on March 31, 2010. Thus, the bottom-line question

for resolving Chapa's motion is whether <u>Padilla</u> announces a new or old rule for purposes of the <u>Teague</u> analysis.

A new rule for <u>Teague</u> purposes is one that was not so "dictated" by precedent in effect when the defendant's conviction became final that it "was apparent to all reasonable jurists." <u>Beard v. Banks</u>, 542 U.S. 406, 413 (2004) (citation omitted); <u>see</u> <u>Graham v. Collins</u>, 506 U.S. 461, 467 (1993); <u>Teague</u>, 489 U.S. at 310.  In other words, a rule is new unless a court considering the defendant's claim at the time his conviction became final "would have acted objectively unreasonably" in declining to grant relief. <u>O'Dell v. Netherland</u>, 521 U.S. 151, 156 (1997); <u>Lambrix v.</u> <u>Singletary</u>, 520 U.S. 518, 532 (1997) (the question is not whether the rule is governed by prior precedent, but whether no "reasonable jurist ... could have reached a conclusion different from the one" the Supreme Court adopted).

Here, the <u>Padilla</u> decision announces a new rule.  Three factors underlie this conclusion: (1) the <u>Padilla</u> opinions reflect a wide divergence of viewpoints among the Supreme Court justices, which shows that reasonable jurists could disagree about what the Court's precedents required; (2) the majority opinion in <u>Padilla</u> breaks from a near-unanimous body of case law that reached the contrary conclusion; and (3) the opinion is a novel application of existing law.

> **1.   The Divergence of Views Among the Justices Shows That Reasonable Jurists**

8

**Could Disagree About What the Supreme Court's Precedents Required.**

First, the divergence of views among the Justices themselves establishes that reasonable jurists could reach different conclusions than the one published in the majority opinion relied upon by Chapa. The existence of diverging viewpoints as to either the reasoning underpinning the new opinion or its result is evidence that reasonable jurists could disagree about what the Court's precedents required. *See* O'Dell, 521 U.S. at 159-160. In Padilla, two concurring Justices disagreed with the majority's requirement that defense counsel must "attempt to explain" the immigration consequences of a plea when the law is "succinct and straightforward." 130 S. Ct. at 1487 (Alito, J., joined by Roberts, C.J., concurring in the judgment). The concurring Justices would have instead limited the Sixth Amendment duty to refrain from "unreasonably providing incorrect advice," *id.*, and advising the defendant that "a conviction may have immigration consequences, that immigration law is a specialized field, that the attorney is not an immigration lawyer, and that the client should consult an immigration specialist if the client wants advice on that subject." *Id.* at 1494. Two dissenting Justices, on the other hand, concluded that the Sixth Amendment did not impose any obligation to provide advice, competent or not, about immigration consequences. *Id.* at 1494-1497 (Scalia, J, joined by Thomas, J., dissenting).

In presenting their reasoning, the Justices themselves recognized the novelty of the Padilla rule. The concurring and dissenting Justices all recognized that the Court's imposition of a Sixth Amendment duty to advise about immigration consequences was a "dramatic expansion of the scope of criminal defense counsel's duties under the Sixth Amendment." 130 S. Ct. at 1492 (Alito, J, concurring); Id. at 1495 (Scalia, J., dissenting). Justice Alito's concurrence asserted that "this Court has never held" that the Sixth Amendment extends to advice about immigration consequences, and characterized the Court's holding as a "dramatic departure from precedent." Id. at 1488. Justice Alito also observed that "the longstanding and unanimous position of the federal courts" was that "reasonable defense counsel generally need only advise a client about the direct consequences of a criminal conviction." Id. at 1487. Similarly, Justice Scalia's dissent argued that the Court's precedents "have limited the Sixth Amendment to legal advice directly related to defense against prosecution of the charged offense." Id. at 1495. In this way, this Court need look no further than the text of the Padilla opinion to readily conclude that the Supreme Court announced a new rule for purposes of the Teague analysis.

## 2. The Near-Unanimous Body of Case Law That Reached the Contrary Conclusion.

Second, courts also look at the lack of consensus on not only the Supreme Court bench, but also among the federal and state

courts when examining whether a decision constitutes a new rule under _Teague_.  _See_ _Butler v. McKellar_, 494 U.S. 407, 415 (1990) (finding that the rule announced in _Arizona v. Roberson_, 486 U.S. 675 (1988), was new in part because "in _Roberson_ ... the Court found [_Edwards v. Arizona_, 451 U.S. 477 (1981)] controlling but acknowledged a significant difference of opinion on the part of several lower courts that had considered the question previously"). Here, federal and state courts before _Padilla_ held a near-unanimous view that the Sixth Amendment did not require counsel to advise defendants on immigration consequences.  Prior to _Padilla_, the Supreme Court had never suggested that defense counsel must advise their clients about matters beyond the scope of the criminal proceeding.  And, as the _Padilla_ Court acknowledged, all of the federal appellate courts to directly consider the issue had held that the Sixth Amendment imposed no duty to advise on collateral consequences.  130 S. Ct. at 1481 & n.9.  The majority of the state courts agreed.  _E.g._, _id._ (citing cases).  This near-unanimity establishes that prior decisions that reached a contrary conclusion than the _Padilla_ majority reflect a "reasonable, good-faith" interpretation of _Strickland_ and other precedents, and that the _Padilla_ rule was not dictated by precedent.  _Cf._ _O'Dell_, 521 U.S. at 156, 166 n.3 ("Our conclusion that the rule of _Simmons_[2] was new finds support in the decisions of the state courts and the lower

---

[2] _Simmons v. South Carolina_, 512 U.S. 154 (1994).

federal courts .... By 1988, no state or federal court had adopted the rule of Simmons.").

### 3. Padilla Is a Novel Application of an Existing Rule.

A third consideration when applying the Teague bar against retroactivity is that it applies not only to cases that announce new rules, but also to novel applications of old rules. See Stringer v. Black, 503 U.S. 222, 228 (1992) ("The interests in finality, predictability, and comity underlying our new rule jurisprudence may be undermined to an equal degree by the invocation of a rule that was not dictated by precedent as by the application of an old rule in a manner that was not dictated by precedent.") This consideration is especially applicable to questions of whether a defendant's lawyer has rendered constitutionally deficient representation under Strickland. These questions usually can be answered by straightforwardly applying Strickland to a different set of facts, while a select number of cases present the broader and more substantive question of whether the Sixth Amendment right to counsel even exists under the specific circumstances.

The broader category of Strickland claims, where the court simply applies the standard to a set of facts, generally do not announce a novel or new rule. The starting point for this analysis is Justice Kennedy's suggestion that an application of an existing rule is less likely to be treated as new for Teague purposes when

the rule establishes a broad standard that is designed to apply across a range of factual scenarios. *See* <u>Wright v. West</u>, 505 U.S. 277, 308-309 (1992) (Kennedy, J., concurring) (holding that the application of the sufficiency-of-the-evidence standard does not create a new rule; "Where the beginning point is a rule of this general application, a rule designed for the specific purpose of evaluating a myriad of factual contexts, it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent."). Using this reasoning, appellate courts – including the Eleventh Circuit – generally consider the <u>Strickland</u> test to be a rule of general application, and have used Justice Kennedy's language to analyze whether new applications of <u>Strickland</u> are new rules for <u>Teague</u> purposes. *See*, *e.g.*, <u>Newland v. Hall</u>, 527 F.3d 1162, 1197 (11th Cir. 2008) ("<u>Strickland</u> set forth the paradigmatic example of a rule of general application; it establishes a broad and flexible standard for the review of an attorney's performance in a variety of factual circumstances.").

Although <u>Strickland</u> cases thus generally do not announce new or novel rules, the <u>Padilla</u> opinion falls into the more narrow category of cases where the court resolves the more complex and novel question of whether the Sixth Amendment applies at all. This conclusion is made apparent by looking first at several examples of the broader category of <u>Strickland</u> claims, where courts have concluded that applications of the <u>Strickland</u> standard to specific

13

facts do not announce a new rule. _Id._ (reviewing cases). A series of cases, including _Williams v. Taylor_, 529 U.S. 362 (2000), _Wiggins v. Smith_, 539 U.S. 510 (2003), and _Rompilla v. Beard_, 545 U.S. 374 (2005), involve ineffective-assistance claims where counsel failed to investigate and present mitigating evidence at capital sentencing proceedings. _Id._ The Eleventh Circuit noted that, in Justice Kennedy's view, the application of _Strickland_'s general standard to these factual scenarios did not create new rules. _Id._ ("In _Williams_, _Wiggins_, and _Rompilla_, the Court did nothing more than apply _Strickland_'s standard to a specific set of circumstances .... [For example], the _Williams_ Court merely reaffirmed that all claims of ineffective assistance of counsel should be resolved by reference to the well-established rubric set forth in _Strickland_."); _see also_ _Smith v. Dretke_, 422 F.3d 269,278-280 (5th Cir. 2005) (same conclusion). And, in _Roe v. Flores-Ortega_, 528 U.S. 470 (2000), the Court examined whether a lawyer's failure to file a notice of appeal after being asked to do so constitutes ineffective assistance, which courts likewise considered to be a straightforward application of the _Strickland_ standard to a set of facts that the Court had not yet considered. _See_ _Lewis v. Johnson_, 359 F.3d 646, 655-657 (3d Cir. 2004) (discussing _Flores-Ortega_).

These cases have emphasized that in each Supreme Court decision applying _Strickland_, the fact that _Strickland_ governed the

situation was established law; the only question was how the Strickland analysis would proceed. *See* Newland, 527 F.3d at 1197 (stating that the Williams/Wiggins/Rompilla cases simply elaborated on what types of attorney conduct were unreasonable under Strickland, and noting that the Wiggins Court emphasized that Strickland itself established the duty of reasonable investigation); *see also* Tanner v. McDaniel, 493 F.3d 1135, 1141-1142 (9th Cir. 2007) (in concluding that Flores-Ortega did not establish a new rule, the court reasoned that the lawyer's duty to file an appeal was already established by Strickland itself and Jones v. Barnes, 463 U.S. 745, 751 (1983)); Frazer v. South Carolina, 430 F.3d 696 (4th Cir. 2005) (noting that prior cases had established that Strickland applied to filing appeals).

In contrast, Padilla falls within the more narrow category of cases that establish a new rule or novel application concerning the Strickland standard.   Unlike   Williams/Wiggins/Rompilla  and Flores-Ortega, which all started from the established principle that Strickland applied to the situations presented and then resolved how the Strickland analysis would proceed, Padilla first resolved an antecedent and more fundamental question: whether Strickland applied at all, or whether advice regarding deportation was "outside the scope of representation required by the Sixth Amendment" as part of the criminal proceedings. *See* Padilla, 130 S. Ct. at 1481; Id. at 1482 (holding that "advice regarding

deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel," and therefore "Strickland applies to Padilla's claim"). The concurring and dissenting opinions confirm that the primary rule announced in Padilla was that an attorney's "Sixth Amendment duties extend to providing advice" about immigration consequences, even though such consequences are outside the scope of the criminal proceeding. Id. at 1488 (Alito, J., joined by Roberts, C.J., concurring in the judgment); Id. at 1495-1496 (Scalia, J.,joined by Thomas, J., dissenting). As Justice Scalia noted, id. at 1495, and the Court did not refute, the Court's precedents had not suggested that the Sixth Amendment governed legal advice not directly related to defending the prosecution itself; the Padilla majority, therefore, had to establish that new rule regarding the scope of the Sixth Amendment itself in order to apply Strickland to Padilla's claim. Thus, Padilla extends the Sixth Amendment -- and therefore the Strickland test -- to a new situation. It is not simply an application of Strickland to a situation clearly within its ambit but never specifically addressed by the Court. As a result, the opinion constitutes a novel application of existing law, announces a new rule, and is not retroactive under Teague.

It also is worth pointing out that the Padilla Court suggested that the answer to the question "whether Strickland applies to Padilla's claim follows from" Hill v. Lockhart, 474 U.S. 52 (1984),

which considered a claim of misadvice as to parole eligibility. 130 S. Ct. at 1485 n.12 (while "_Hill_ does not control the question before us ... its import is nevertheless clear"). As Justice Alito points out in his concurring opinion, however, _Hill_ declined to decide whether "there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance." _Id._ at 1491-1492 (quoting _Hill_, 474 U.S. at 60). Thus, it is incorrect to say -- and the Court did not go so far as to suggest -- that _Padilla_'s holding was dictated or compelled by _Hill_. Lower federal courts that confronted misadvice and non-advice claims before _Padilla_ also do not view _Hill_ as having already decided how the Sixth Amendment should apply. _See_, _e.g._, _United States v. Kwan_, 407 F.3d 1005, 1015-1017 (9th Cir. 2005); Fry, 322 F.3d at 1200. At most, a defendant could argue that _Hill_ suggests that misadvice might be cognizable. But the fact that a rule might follow from existing precedent does not mean that it is not new, and in any event, the existence of varying views as to whether a particular precedent "controls" a ruling suggests that the rule is a new one. _O'Dell_, 521 U.S. at 161 n.2 ("We have noted that 'courts frequently view their decisions as being "controlled" or "governed" by prior opinions even when aware of reasonable contrary conclusions reached by other courts.'") (quoting _Butler_, 494 U.S. at 415).

**B.   The Conclusion That _Padilla_ Adopts a New Rule Applies With Equal Force to Claims of Misadvice**

**Regarding Immigration Consequences of a Plea, as to**
**Claims of Failure to Advise at All.**

The conclusion here, that <u>Padilla</u> adopts a new rule under
<u>Teague</u>, applies not only to claims involving a failure to advise of
immigration consequences, but also to claims like Chapa's where he
asserts that his lawyer affirmatively gave him incorrect advice
that his plea would have no immigration consequences. <u>Padilla</u>
announced a unified rule that the Sixth Amendment's guarantee of
effective assistance of counsel in deciding whether to plead guilty
extends to advice about the deportation consequences of pleading,
and counsel's conduct -- whether he failed to give any immigration
advice or gave erroneous advice - is judged under the <u>Strickland</u>
standard.  130 S. Ct. at 1483-1484.  The decision's rationale does
not distinguish between non-advice and misadvice.  <u>Id.</u> at 1484
("There is no relevant difference between an act of commission and
an act of omission in this context.") (internal quotation marks
omitted).  Rather, <u>Padilla</u> imposes a single duty: to act reasonably
with respect to a non-citizen defendant's concerns about
deportation by advising about the possibility of deportation in a
reasonably competent manner.  That duty flows from the Court's
establishing, for the first time, that the Sixth Amendment extends
to advice about a matter outside of the scope of the criminal
proceeding.  That extension is a new rule for the reasons stated
above, and therefore the specific duties that flow from it are new
rules as well.

The Eleventh Circuit, in considering misadvice claims before
Padilla, held that misadvice might, under extremely limited
circumstances where deportation would result in death[3] or
imprisonment, be the basis for an ineffectiveness claim.
Downs-Morgan v. United States, 765 F.2d 1534, 1541 (11th Cir.
1985). That said, the Teague analysis asks a more limited
question, which is whether the ruling in Downs-Morgan and other
similar cases establish that Padilla's misadvice ruling was
compelled by pre-existing precedent. The answer is no. The
Padilla decision shows that seven Justices agreed on an analytical
approach that asked first whether the Sixth Amendment applied at
all, and then, based on the answer to that question, treated
non-advice and misadvice in the same way. Given that the state of
the law before Padilla was that the Sixth Amendment did not impose
any duty to advise about collateral consequences in the context of
a guilty plea, it would have been reasonable to hold that erroneous
advice about such consequences also would not be the basis for an
ineffectiveness claim. The dissenting Justices underscore that if

---

[3] It should be noted that Chapa does assert that because of
his cooperation with the Government, his life and that of his
family might be in danger. (Docs. 257-3, 262-3). However, other
than his own statements made within his pleadings, he offers no
evidence to substantiate these claims and makes no distinction
between a potential danger here in the United States as opposed
to one in Mexico. Moreover, the Eleventh Circuit's reference to
the threat of death in Downes-Morgan was a reference to the
imposition of a death penalty by the Nicaraguan government. 765
F.2d at 1541.

one's starting point is that the Sixth Amendment does not require advice beyond the criminal proceeding, it is reasonable to conclude that misadvice is not cognizable: when "the subject of the misadvice ... was not the prosecution for which (the defendant) was entitled to effective assistance of counsel, the Sixth Amendment has no application."  130 S. Ct. at 1495 (Scalia, J., dissenting).

Moreover, there was no unanimity among the lower courts with respect to misadvice claims.  Only three federal courts of appeals (the Second, Ninth, and Eleventh Circuits) had squarely held that misadvice about immigration consequences could be ineffective.  And those decisions disagreed as to the basis for their holding, indicating that Padilla's rule was not compelled by existing precedent.  The Eleventh Circuit premised its reasoning regarding misadvice on an attorney's duty to make sure that a defendant's plea is knowing and voluntary -- "certain considerations are so important that misinformation from counsel may render the guilty plea constitutionally uninformed" -- and stressed that its rule applied only when the defendant faced death or imprisonment if deported.  Downs-Morgan, 765 F.2d at 1541 & n.15.  The Second and Ninth Circuits applied a broader rule, holding that giving grossly erroneous misadvice could be deficient performance regardless of the severity of the consequences of being deported.  See Kwan, 407 F.3d at 1015-1017; United States v. Couto, 311 F.3d 179,187- 188 (2d Cir. 2002).  Kwan and Couto did not explain in detail why

misadvice differed from non-advice, but the rationale seems to have been that giving grossly erroneous misadvice was much more unreasonable than not giving any advice.

Accordingly, this lack of unanimity among the circuit courts shows that _Padilla_'s conclusion was not compelled by lower court decisions.  To the contrary, it shows that reasonable jurists could disagree about the application of _Strickland_ to such circumstances, and this lack of consensus is readily apparent among the justices themselves.  Given the novel application of _Strickland_, the Court should conclude that _Padilla_ establishes a new rule that is not retroactive for purposes of § 2255, even as applied to misadvice claims, and deny Chapa's request.

**C.   Even if _Padilla_ Is Retroactively Applicable, Chapa's Pleading Is Insufficient to Establish Deficient Performance or Actual Prejudice and his _Padilla_ Claim Should Be Dismissed on that Ground.**

AS discussed above, Chapa asserted a new claim of ineffective assistance of counsel in his emergency letter docketed as of April 14, 2010, based upon the Supreme Court's recent ruling in _Padilla_. (Doc. 262).  This Court should deny Chapa's § 2255 claim.  However, even were this court to determine that the Supreme Court's new rule as outlined in _Padilla_ is retroactive, Chapa has failed to establish a deficient performance or actual prejudice as required by _Strickland_.  466 U.S. 668.

In _Padilla_, the Supreme Court held that a lawyer representing a non-citizen defendant in connection with a guilty plea has a

constitutional duty to advise the defendant regarding the risk of deportation or removal arising from his conviction. Defense counsel's failure to so advise his client or provision of inaccurate advice regarding the immigration consequences of the plea may constitute deficient performance under Strickland. Padilla, 130 S. Ct. at 1483-1486.

However, in order to prevail on a claim of ineffective assistance of counsel, a defendant must prove both incompetence and prejudice; however, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697; see also Chandler v. United States, 218 F.3d 1305, 1312 (11th Cir. 2000). Specifically, a defendant must show that "(1) . . . counsel's representation fell below an objective standard of reasonableness [incompetence], and (2) . . . there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different [prejudice]." Chandler, 218 F.3d at 1312-13. Importantly, the Padilla Court did not express any opinion whether Padilla was able to establish prejudice as a result of the deficient performance of his attorney. 130 S. Ct. at 1485 ("To obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

22

The plea and sentencing hearing transcripts in CHapa's case are silent with respect to providing any support for the notion that Chapa's counsel provided any inaccurate guidance about the immigration status consequences of entering a guilty plea. (See Docs. 88, 247).   The topic simply is not mentioned at all.   The only factual support for Chapa's <u>Padilla</u> claim arises from Chapa's response and affidavit, where he asserts that his counsel misled him regarding his deportation and removal status from the United States.   (Docs. 262-2, 267-3).   Noticeably absent from any of Chapa's pleadings is a statement Chapa would not have entered a guilty plea if he had known that the plea would affect his immigration status.   To the contrary, he states in his response "I am not challenging my guilty plea." (Doc. 272-2).

Courts already are concluding, however, that such self-serving assertions of ineffective assistance, without any evidentiary support, are insufficient to establish prejudice and support an ineffective assistance of counsel claim based on <u>Padilla</u>.   <u>See</u> <u>United States v. Dwumaah</u>, Crim. No. 1:05-CR-0157, 2010 WL 2294051, at *1 n.4 (M.D. Pa. June 2, 2010) ("After considering Dwumaah's allegations, the court finds that, while they may suffice to show constitutionally deficient representation under <u>Padilla</u>, they fail to show prejudice. ...   Dwumaah claims that, if he had known that his guilty plea would make him removable, 'he would have gone to trial instead of pleading guilty.' ... Dwumaah also states that he

was prejudiced, ... and argues that 'had [he gone] to trial, it was highly probable that [he would have been] acquitted by a jury,' .... However, such conclusory assertions do not show a reasonable probability that the result of the proceedings would have been different in the absence of his attorney's alleged error."). As mentioned above and in contrast to <u>Dwumaah</u>, Chapa specifically states in his pleadings that he is not challenging his guilty plea. (Doc. 272-2). Therefore, since Chapa has failed to show any actual prejudice, the Court can dismiss Chapa's claim on this factual ground, as well as the legal grounds argued earlier.

<b><u>CONCLUSION</u></b>

Chapa's motion to vacate his sentence pursuant 28 U.S.C. § 2255 should be denied in its entirety based upon his valid sentence appeal waiver. Moreover, his claims under <u>Padilla</u> should be dismissed because this newly established rule is not retroactive. Even if it were retroactive, Chapa has failed to show prejudice sufficient to demonstrate the result of the proceeding would have been different. Therefore, for all of the foregoing reasons, Chapa's § 2255 motion to vacate sentence should be denied.

Respectfully Submitted, this 13th day of September, 2010.

SALLY QUILLIAN YATES
United States Attorney
Northern District of Georgia

/s/
CASSANDRA J. SCHANSMAN
Assistant United States Attorney
Georgia Bar No. 183184
400 Richard B. Russell Building
75 Spring Street, SW
Atlanta, Georgia 30303

```
(404) 581-6000
(404) 581-6181 FAX
```

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,      : CRIMINAL INDICTMENT
                               : 1:05-CR-254-3 (JTC)
        v.                     :
                               :
IVAN DEJESUS CHAPA,            :
Defendant.                     :

## CERTIFICATE OF COMPLIANCE AND SERVICE

I hereby certify that the above was prepared using Courier New 12 point font, and that I have caused a copy of the foregoing GOVERNMENT'S SECOND RESPONSE TO DEFENDANT'S CLAIMS UNDER PADILLA V. KENTUCKY AS PRESENTED IN HIS MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 to be delivered to the individual(s) listed below by depositing a copy in the United States mail in an envelope bearing sufficient postage for delivery:

                Ivan DeJesus CHapa
                Reg. 49858179
                McRae Correctional Facility
                Post Office Drawer 30
                McRae, Georgia 31055

This 13th day of September, 2010.


                /s/_____
                CASSANDRA J. SCHANSMAN
                Assistant United States Attorney