# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **IVAN DEJESUS CHAPA,** | : | **CIVIL ACTION NO.** |
| **Movant,** | : | **1:10-CV-1885-RLV-AJB** |
| | : | |
| **v.** | : | **CRIMINAL ACTION NO.** |
| | : | **1:05-CR-254-RLV-AJB-3** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | **MOTION TO VACATE** |
| **Respondent.** | : | **28 U.S.C. § 2255** |

## ORDER FOR SERVICE OF REPORT AND RECOMMENDATION

The Report and Recommendation of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1) and this Court's Local Rule 72, is attached. The same shall be filed and a copy, together with a copy of this Order, shall be served upon the parties.

Pursuant to 28 U.S.C. § 636(b)(1)(C), within fourteen (14) days of service of this Order, each party may file written objections, if any, to the Report and Recommendation. Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the Report and

Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

The Clerk is **DIRECTED** to submit the Report and Recommendation with objections, if any, to the District Judge after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED**, this 14th day of June, 2011.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **IVAN DEJESUS CHAPA,** | : | **CIVIL ACTION NO.** |
| **Movant,** | : | **1:10-CV-1885-RLV-AJB** |
| | : | |
| **v.** | : | **CRIMINAL ACTION NO.** |
| | : | **1:05-CR-254-RLV-AJB-3** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | **MOTION TO VACATE** |
| **Respondent.** | : | **28 U.S.C. § 2255** |

## UNITED STATES MAGISTRATE JUDGE'S
## <u>FINAL REPORT AND RECOMMENDATION</u>

Movant's motion to vacate sentence under 28 U.S.C. § 2255 is pending before the Court.  [Docs. 251, 267.][1]  Movant, *pro se*, challenges his conviction and sentence in this Court for conspiracy to possess with the intent to distribute at least five kilograms of cocaine.  Respondent opposes the motion.  [Doc. 277].  For the reasons discussed below, the undersigned **RECOMMENDS** that the Court deny the motion and issue a certificate of appealability on the issue of whether *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), announced a new rule of criminal procedure that is retroactively applicable to cases on collateral review.

---

[1]     Unless otherwise indicated, all citations to the record in this Report and Recommendation refer to Criminal Action Number 1:05-CR-254-RLV-AJB.

## I.      Background

On May 9, 2006, Movant entered a negotiated guilty plea to conspiracy to possess with the intent to distribute at least five kilograms of cocaine.  [Doc. 86.]  In his plea agreement, Movant agreed to waive "the right to appeal his sentence and the right to collaterally attack his sentence in any post-conviction proceeding on any ground" unless the Court upwardly departed from the applicable sentencing guidelines range when it sentenced him.  [Doc. 86-2 ("Plea Agr.") at 5.]  Movant acknowledged in the plea agreement that he would have appeal rights if he did not plead guilty and that he was voluntarily waiving those rights by accepting the negotiated plea.  (Plea Agr. at 5, 11.)  Attorney Richard R. Alamia represented Movant in connection with his guilty plea.  (*Id.*)

On October 14, 2008, the Court sentenced Movant to 148 months' imprisonment, among other things.  [Docs. 212, 213.]  Movant appealed, but the U.S. Court of Appeals for the Eleventh Circuit dismissed his appeal on December 9, 2009 "pursuant to the valid   and   enforceable   sentence   appeal   waiver   in   [Movant's]   plea agreement."   [Doc. 250.]   Movant did not seek a writ of certiorari from the U.S. Supreme Court, and his conviction thus became final on March 9, 2010. *See* Sup. Ct. R. 13 (imposing a ninety-day deadline for filing a petition for writ of

2

certiorari to review an appellate court's judgment in a criminal case).

On March 8, 2010, Movant filed an "emergency letter motion," in which he asked the Court to reduce his sentence and authorize the Bureau of Prisons to transfer him to a facility in Texas. [Doc. 251.] Movant stated at that time that he feared for his family's safety in Texas given that he was a cooperating witness for the government in its case against his co-defendants. (*Id.*) He also argued that the Court should not have applied at sentencing a two-point enhancement for supervisory role in the crime because he played no such role. (*Id.*) Respondent recommended that the Court construe the "emergency letter motion" as a motion under 28 U.S.C. § 2255 and deny it based on the appeal waiver contained in Movant's plea agreement. [Doc. 255.]

On March 31, 2010, the Supreme Court issued its decision in *Padilla v. Kentucky*, holding that a criminal defense attorney may render constitutionally ineffective assistance by failing to advise her non-citizen client of the risk of deportation associated with a guilty plea. 130 S. Ct. at 1486. The Supreme Court held that defense counsel in *Padilla* was constitutionally deficient in misadvising his client about the risk of deportation if the client pled guilty to a crime. *Id.* at 1478. The Supreme Court remanded the case for a determination of whether the erroneous advice prejudiced the defendant. *Id.* at 1486-87.

3

Shortly thereafter, Movant filed supplements to his emergency letter motion, alleging that Alamia assured Movant that he would remain in the United States if he pled guilty and that Alamia would represent him if immigration authorities attempted to remove him.  [Docs. 262, 264, 267.]  Movant claims that Alamia's advice was erroneous and violated his right to effective assistance of counsel as recognized in *Padilla*.  (*Id.*)  He contends that he would not have pled guilty but for Alamia's erroneous advice regarding the risk of deportation.  [Doc. 267 at 2, Doc. 274 at 3.]

On July 29, 2010, the Court advised Movant that it would recharacterize his emergency letter motion as a § 2255 motion unless he withdrew it.  [Doc. 270.] Movant informed the Court that he would not withdraw the motion and did not oppose recharacterization of it, along with the supplements he filed regarding his *Padilla* claim, as a § 2255 motion.  [Doc. 272.]  The Court directed Respondent to address Movant's new ineffective assistance claim in light of *Padilla*.  [Doc. 269.]

Respondent argues that Movant's ineffective assistance claim, like his earlier claim regarding the supervisory role sentence enhancement, is barred by his appeal waiver and that the claim otherwise fails.  [Doc. 277.]  Respondent contends that *Padilla* provides no support for Movant's claim because Movant's conviction became final before *Padilla* was decided, *Padilla* announced a new rule of criminal procedure,

4

and the new rule does not apply to cases on collateral review under the retroactivity doctrine set out in *Teague v. Lane*, 489 U.S. 288 (1989).  [*Id.*]

## II.    The 28 U.S.C. § 2255 Standard

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  A sentence is subject to collateral attack when there is a fundamental defect that results in a complete miscarriage of justice. *United States v. Addonizio*, 442 U.S. 178, 185 (1979).  "To obtain collateral relief, a [movant] must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

A criminal defendant who executes a plea agreement may waive his right to collaterally challenge his conviction and sentence under § 2255, and such a waiver will be enforced if it is made knowingly and voluntarily.  *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005); *United States v. Bushert*, 997 F.2d 1343, 1350-51 (11th Cir. 1993).  The appeal waiver is made knowingly and voluntarily if either: "(1) the district court specifically questioned the defendant concerning the sentence

5

appeal waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *Williams*, 396 F.3d at 1341 (citation and quotations omitted).  However, an appeal waiver likely does not waive the right to challenge the validity of the plea in which the waiver is contained or waive a claim that counsel was ineffective in advising the defendant regarding the plea. *See id.* at 1342 n.2; *Patel v. United States*, 252 Fed. Appx. 970, 974 (11th Cir. 2007) (noting that "[w]e have not specifically reached the issue of whether a valid appeal waiver can preclude § 2255 claims based on ineffective assistance of counsel that challenge the validity of the plea or the waiver itself," but finding error in the district court's denial of such claims based on appeal waiver).

## III.   Analysis

Movant contends that his guilty plea is invalid because Alamia rendered ineffective assistance by misadvising Movant that he would not be deported if he pled guilty.  The appeal waiver contained in Movant's plea agreement does not bar those claims because the claims challenge the validity of the guilty plea itself.  Those claims rely on *Padilla*.  Because *Padilla* was decided after Movant's conviction became final on direct review, the Court must determine whether *Padilla* applies retroactively to cases on collateral review.

6

No federal appellate court has yet decided in a published opinion whether *Padilla* announced a new rule or may be applied to cases on collateral review.  *See United States v. Hernandez-Monreal*, 404 Fed. Appx. 714, 715 n.* (4th Cir. Dec. 10, 2010) (holding that "nothing in the *Padilla* decision indicates that it is retroactively applicable to cases on collateral review").  District courts have split on the issue.  *Compare Ellis v. United States*, No. 10 Civ. 4017(BMC), 2011 WL 2199538, *7-8 (E.D.N.Y. June 6, 2011) (holding that *Padilla* announced a new rule of criminal procedure, not a new rule of substantive law, and that the rule announced in *Padilla* falls far short of the type of watershed procedural rule that is applied retroactively on collateral review), *and United States v. Laguna*, No. 10 CR 342, 2011 WL 1357538, *4-6 (N.D. Ill. Apr. 11, 2011) (holding that *Padilla* is a new constitutional rule of procedure that cannot be applied retroactively to cases on collateral review), *and Mendoza v. United States*, No. 1:01cr214, 2011 WL 1226475, *4-5 (E.D. Va. Mar. 24, 2011) (same), *and United States v. Hough*, No. 2:02-cr-00649-WJM-1, 2010 WL 5250996, *3-4 (D.N.J. Dec. 17, 2010) (same), *and United States v. Perez*, No. 8:02CR296, 2010 WL 4643033, *2 (D. Neb. Nov. 9, 2010) (same), *with Amer v. United States*, No. 1:06CR118–GHD, 2011 WL 2160553, *3 (N.D. Miss. May 31, 2011) (holding that "[b]oth the language of *Padilla* and the application of *[T]eague*'s test indicate that the *Padilla* hol[]ding should

7

apply retroactively"), *and Marroquin v. United States*, No. M-10-156, 2011 WL 488985, *2 (S.D. Tex. Feb. 4, 2011) (holding that *Padilla* is not a new rule and applies retroactively), *and Martin v. United States*, No. 09-1387, 2010 WL 3463949, *3 (C.D. Ill. Aug. 25, 2010) (same), *and United States v. Chaidez*, 730 F. Supp. 2d 896, 900-01 (N.D. Ill. 2010) (same), *and Gacko v. United States*, No. 09-CV-4938 (ARR), 2010 WL 2076020, *3 (E.D.N.Y. May 20, 2010) (same).[2]

For the reasons set out below, the undersigned finds that *Padilla* announced a new rule and should not apply retroactively in this case.

A.    The *Teague* Retroactivity Doctrine

"The *Teague* doctrine bars retroactive application in a § 2255 proceeding of any new constitutional rule of criminal procedure which had not been announced at the time the movant's conviction became final, with two narrow exceptions." *McCoy v. United States*, 266 F.3d 1245, 1255 (11th Cir. 2001) (citing *Teague*, 489 U.S. at 310-13). The exceptions are if the new rule "(1) "places certain kinds of primary private individual conduct beyond the power of the criminal law-making authority to proscribe" or

———————————

[2]    State courts are also split. *See, e.g., Miller v. State*, 11 A.3d 340, 351-52 (Md. Ct. Spec. App. 2010) (holding that *Padilla* announced a new rule); *People v. Bennett*, 903 N.Y.S.2d 696, 699-700 (N.Y. Crim. Ct. 2010) (holding that *Padilla* is not a new rule and applies retroactively).

8

(2) "requires the observance of those procedures that . . . are implicit in the concept of ordered liberty", i.e., "new procedures without which the likelihood of an accurate conviction is seriously diminished." *Teague*, 489 U.S. at 307, 313 (quotations omitted).

A case announces a "new rule" if it "breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* at 301 (citations omitted). "A result is not dictated by precedent just because the result the habeas petitioner seeks is within the logical compass of a prior Supreme Court decision, or because prior Supreme Court decisions inform, or even control or govern, the analysis of the claim." *Howard v. United States*, 374 F.3d 1068, 1074 (11th Cir. 2004) (quotations omitted). Instead, "a result is dictated by precedent only if the court considering the claim at the time the conviction became final 'would have felt compelled by existing precedent to conclude that the rule [the defendant] seeks was required by the Constitution.' " *Id.* (quoting *Glock v. Singletary*, 65 F.3d 878, 884 (11th Cir. 1995)).

B.   *Padilla* Announced A New Rule that is Not Retroactively Applicable

The Supreme Court's holding in *Padilla* – that a criminal defendant's Sixth Amendment right to effective assistance of counsel may be violated when his lawyer

misadvises or fails to advise him about deportation risks associated with a guilty plea – "was not *dictated* by precedent existing at the time [Movant's] conviction became final" on March 9, 2010.  In fact, existing precedent in this circuit and virtually every other jurisdiction in this country dictated the opposite result at that time.  *See Padilla*, 130 S. Ct. at 1487 (Alito, J., concurring) (describing the position of the lower federal courts as "longstanding and unanimous"); *Miller*, 11 A.3d at 349 ("Nine of the twelve federal circuits had spoken on the subject before the Supreme Court's decision in *Padilla* and their verdict was unanimous.").

Before *Padilla*, the Eleventh Circuit decided two cases involving the issue of criminal defense counsel's advice on the immigration consequences associated with a guilty plea.  *United States v. Campbell*, 778 F.2d 764 (11th Cir. 1985), *abrogated by Padilla v. Kentucky*, 130 S. Ct. 1473 (2010); *Downs-Morgan v. United States*, 765 F.2d 1534 (11th Cir. 1985).  In *Campbell*, the court held that a lawyer's failure to advise her client of the risk of deportation does not constitute constitutionally ineffective assistance of counsel.  778 F.2d at 768-69.  In *Downs-Morgan*, the court held that a lawyer's affirmative misadvice to her client regarding the risk of deportation does not necessarily constitute ineffective assistance, but may do so in the "unique circumstances" where the client faces "imprisonment and execution" if she is deported.

10

765 F.2d at 1540-41 & n.15.

Given that "a result is dictated by precedent only if the court considering the claim at the time the conviction became final 'would have felt compelled by existing precedent to conclude that the rule [the defendant] seeks was required by the Constitution,' " *Howard*, 374 F.3d at 1074, it follows from the precedent existing at the time Movant's conviction became final that *Padilla*'s result was not dictated. Thus, *Padilla* announced a new rule. *See id.*; *Glock*, 65 F.3d at 884.

The Eleventh Circuit has applied this straightforward analysis in determining whether a Supreme Court decision established a new rule applicable to a case on collateral review under § 2255. *McCoy*, 266 F.3d at 1256. In *McCoy*, the Eleventh Circuit reasoned that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), announced a new rule under *Teague*'s standard because the rule

> was not dictated by precedent existing before the *Apprendi* decision was released. Until [*Apprendi*] was announced, all circuits had been upholding sentences that were greater than the otherwise applicable maximum sentences based on drug quantity not charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt. Therefore, under *Teague*, because the new rule had not been announced at the time McCoy's conviction became final, it cannot be applied retroactively to his § 2255 petition unless it meets one of *Teague*'s two narrow exceptions.

*McCoy*, 266 F.3d at 1256.

11

Applying the same reasoning here, *Padilla* announced a new rule because not only was its conclusion not *dictated* by precedent existing at the time Movant's conviction became final, its conclusion *had been rejected* by existing precedent in the Eleventh Circuit and by virtually every other court to address the issue. At the time the Eleventh Circuit reviewed Movant's case on direct appeal, it could not have "felt compelled by existing precedent" to conclude that Alamia rendered ineffective assistance by misadvising Movant that he would not be deported if he pled guilty because existing precedent – *Campbell* and *Downs-Morgan* – rejected such a claim.

*Padilla*'s rejection of the analytical basis underlying the lower court decisions on the issue further supports the finding that *Padilla* announced a new rule. The Eleventh Circuit, like most other courts that had decided the issue, reached a different conclusion than *Padilla* based on its finding that the risk of deportation is a collateral, rather than a direct, consequence of pleading guilty. *See Campbell*, 778 F.2d at 768-69; *see also Padilla*, 130 S. Ct. at 1487 (Alito, J., concurring) ("Until today, the longstanding and unanimous position of the federal courts was that reasonable defense counsel generally need only advise a client about the *direct* consequences of a criminal conviction.").

Before concluding that the test it set out in *Strickland v. Washington*, 466 U.S.

12

668 (1984), applied to the claim presented in *Padilla*, the Supreme Court first addressed the lower court's view that "collateral consequences are outside the scope of representation required by the Sixth Amendment." *Padilla*, 130 S. Ct. at 1481 & n.9 (citing decisions from six federal courts of appeal, including *Campbell*, in noting that the lower court was "far from alone in this view"). The Supreme Court refused to apply the distinction between direct and collateral consequences, finding it "ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation," and concluded that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Id.* at 1481-82. The undersigned therefore agrees with Respondent that *Padilla* resolved the "more complex and novel question of whether the Sixth Amendment applies at all" to ineffective assistance claims like Movant's. [*See* Doc. 277 at 13-15.] *Padilla*'s resolution of that antecedent question conflicts with the lower courts' resolution of it and, thus, further indicates that *Padilla* announced a new rule.[3]

---

[3]    The Supreme Court provided context to the issue it faced in *Padilla* by discussing the "dramatic[]" changes in recent years to federal immigration law that "dramatically raised the stakes of a non-citizen's criminal conviction." *Padilla*, 130 S. Ct. at 1478, 1480. That discussion bolsters the finding that *Padilla* broke new ground, as the concurring justices suggested. *See id.* at 1488 (Alito, J., concurring) (referring to the decision as a "dramatic departure from precedent" and as establishing a "new approach" to counsel's provision of immigration advice).

13

Because *Padilla* announced a new rule, it does not retroactively apply to cases, like this one, on collateral review unless one of *Teague*'s two "narrow exceptions" applies. *See McCoy*, 266 F.3d at 1255. The first exception does not apply because *Padilla*'s new rule does not decriminalize any class of conduct, i.e., it does not "place[] certain kinds of primary private individual conduct beyond the power of the criminal law-making authority to proscribe." *See Teague*, 489 U.S. at 307 (quotations omitted). The second exception, which "requires the observance of those procedures that . . . are implicit in the concept of ordered liberty", *id.*, also does not apply.

The Supreme Court has "repeatedly emphasized the limited scope of the second *Teague* exception." *Beard v. Banks*, 542 U.S. 406, 417 (2004). Indeed, the Supreme Court "[has] yet to find a new rule that falls under the second *Teague* exception." *Id.* at 417, 419-20 (holding that even a new rule that removes the possibility of arbitrary infliction of a death sentence does not satisfy *Teague*'s second exception). To fit within this exception, a new rule must be a "watershed" rule of criminal procedure that improves the accuracy of trial and "alter[s] our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *McCoy*, 266 F.3d at 1257 (quotations and emphasis omitted). The undersigned finds that *Padilla*'s rule that criminal defense counsel may be ineffective in failing to advise a non-citizen client of

14

the immigration consequences of a conviction is not a watershed rule implicating the

fundamental fairness of trial to the extent required to satisfy *Teague*'s second

exception.[4]   Accordingly, because *Padilla* does not fall within either of *Teague*'s

_____

[4]        In applying the "watershed" exception, the Supreme Court has

repeatedly referred to the rule of *Gideon v. Wainwright*, 372 U.S. 335[ ]
(1963) (right to counsel), and only to this rule.  *See, e.g., Saffle* [*v. Parks*,
494 U.S. 484,] 495 [(1990)]; *cf. Gilmore v. Taylor*, 508 U.S. 333, 364[ ]
(1993) (Blackmun, J., dissenting).  *Gideon* overruled *Betts v. Brady*,
316 U.S. 455[ ] (1942), noting that *Betts* itself had "made an abrupt break
with [the Court's] well-considered precedents."  372 U.S., at 344[ ].  The
Court continued:

> "Lawyers to prosecute are everywhere deemed essential to
> protect the public's interest in an orderly society.  Similarly,
> there are few defendants charged with crime, few indeed,
> who fail to hire the best lawyers they can get to prepare and
> present their defenses.  That government hires lawyers to
> prosecute and defendants who have the money hire lawyers
> to defend are the strongest indications of the widespread
> belief that lawyers in criminal courts are necessities, not
> luxuries.  *The right of one charged with crime to counsel
> may not be deemed fundamental and essential to fair trials
> in some countries, but it is in ours.  From the very beginning,
> our state and national constitutions and laws have laid great
> emphasis on procedural and substantive safeguards
> designed to assure fair trials before impartial tribunals in
> which every defendant stands equal before the law.  This
> noble ideal cannot be realized if the poor man charged with
> crime has to face his accusers without a lawyer to assist
> him.*"  *Ibid.*  [ ].

15

exceptions, it does not apply in this case.  The law existing at the time Movant's

conviction became final must be applied to his ineffective assistance claim.

> ### C.  Movant's Ineffective Assistance Claim Fails Under the Law As It Existed before *Padilla*

As discussed above, before *Padilla* the law in this Circuit was that a lawyer's

erroneous advice to his client regarding the risk of deportation from pleading guilty

may constitute ineffective assistance if his client faces imprisonment or execution if he

is deported and the "totality of the circumstances" demonstrate that the lawyer's

performance was deficient.  *Downs-Morgan*, 765 F.2d at 1540-41 & n.15.  The

defendant in *Downs-Morgan* averred that his lawyer erroneously told him he would not

be deported to Nicaragua if he pled guilty.  *Id.* at 1538 n.8.  The defendant further

averred that if he was deported, Nicaraguan officials would definitely imprison him and

------

> *See also id.*, at 344-345[ ] (quoting *Powell v. Alabama*, 287 U.S. 45, 68-69[ ] (1932)).  *Gideon*, it is fair to say, "alter[ed] our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Sawyer v. Smith*, 497 U.S. 227, 242[ ] (1990) (internal quotation marks omitted).

*Beard*, 542 U.S. at 417-18 (emphasis in *Beard*).  The *Beard* Court contrasted the *Gideon* rule with other pronouncements which were held not to apply retroactively because they were not "on par" with the "sweeping [nature] of *Gideon*, which established an affirmative right to counsel in all felony cases."  *Id.* at 418-19 (citations omitted).

16

possibly give him the death penalty because of his anti-communist acts.  *Id.*

In the seven filings Movant submitted in the past year as part of his § 2255 proceedings, he has repeatedly contended that his family in Texas is in danger because Mexican drug dealers know he cooperated with Respondent in this case. [*See* Docs. 251, 257, 262, 264, 267, 272, 274.]  In two of those filings, while discussing the potential retaliation against his family from the drug dealers, Movant summarily alleged that his own "life would be in danger to return back to Mexico", [Doc. 274 at 3], and that "[t]o now return to Mexico is to face certain death", [Doc. 262 at 3]. Those two belated statements are the only hint in all of Movant's filings of any potential harm to him if he is deported.  In his lengthiest filing regarding the harm his family in Texas currently faces, Movant mentioned no potential harm to himself if he is deported to Mexico or even if he stays in the U.S. after release from prison. [Doc. 257].  And unlike the defendant in *Downs-Morgan*, Movant has not alleged a risk of persecution by the Mexican government if he is deported.

Movant's filings demonstrate that his case does not present the "unique circumstances" to which *Downs-Morgan*'s rule is limited.  The Eleventh Circuit was careful to "emphasize the narrowness of [its] decision" in *Downs-Morgan* and would not even "suggest that an affirmative misrepresentation by counsel in response to a

17

specific inquiry about the possibility of deportation or exclusion, without the additional factors of imprisonment and execution, is sufficient to warrant collateral relief." Moreover, the court found the risks of imprisonment or execution to the defendant in *Downs-Morgan* pertinent "especially [] when we consider that [he] makes at least a colorable claim of innocence." *Id.* at 1541. Movant does not assert that he is innocent of the crime to which he pled guilty. Nor does he offer any support for his conclusory allegation that Alamia's alleged advice about the risk of deportation was erroneous. Movant has not shown that, considering all the circumstances, Alamia's performance was deficient.

Movant also has not offered anything beyond his bare allegations to support a finding that he was prejudiced, i.e., that he would not have pled guilty if Alamia had not given him allegedly erroneous advice regarding the risk of deportation.[5] The Supreme Court noted in *Padilla* that "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 130 S. Ct. at 1485. Movant has not even attempted to make such a showing here. His conclusory allegations of prejudice fail

---

[5]     At the same time, significantly, Movant also states that he "is not challenging his guilty plea but seeking the cure of justice to remedy the effects petitioner have suffered from." [Doc. 274 at 3].

18

to carry his burden on his ineffective assistance claim.

In sum, the undersigned finds that *Padilla* should not be applied retroactively in this case and that Movant's ineffective assistance of counsel claim fails under pre-*Padilla* law in this circuit. Movant's challenge to his guilty plea based on the alleged ineffective assistance of counsel fails for the same reasons. As a result, the appeal waiver contained in Movant's plea agreement is valid and bars his remaining claim that he was improperly sentenced.[6] The undersigned therefore recommends that Movant's § 2255 motion be denied.

## IV.   Certificate of Appealability ("COA")

Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may issue "only if the applicant has made a substantial showing

---

[6]    The record establishes that Movant knowingly and voluntarily agreed to the appeal waiver. At his plea hearing, Movant acknowledged that he had voluntarily executed the plea agreement with the assistance of his counsel and that he understood that he was waiving his right to appeal by doing so. [Doc. 88 at 6-7, 9-10.] Moreover, the Eleventh Circuit found that Movant's appeal waiver was "valid and enforceable." [Doc. 250]; *see United States v. Lynn*, 385 Fed. Appx. 962, 965-66 (11th Cir. 2010) (holding that appellate court's prior decision that appeal waiver was valid was the law of the case and barred the defendant's challenge to his sentence); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." (quotations omitted)).

19

of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v . McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and internal quotations omitted).

A COA is warranted in this case.  As discussed in Part III, above, the resolution of Movant's § 2255 motion largely turns on the issue of whether the Supreme Court's holding in *Padilla* retroactively applies to cases on collateral review.  The answer to that question is reasonably debatable among jurists of reason, as demonstrated by the split of authority that has developed in the state and federal courts in the year since *Padilla* was decided.  *See supra* Part III.  Accordingly, the undersigned finds that Movant might make a substantial showing of the denial of a constitutional right should he appeal the Court's ultimate ruling on his § 2255 motion.  The undersigned recommends that, if this Report and Recommendation is adopted, the Court issue a COA on the issue of whether *Padilla* announced a new rule of criminal procedure that is retroactively applicable to cases on collateral review.

20

## V.      Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Movant's motion to vacate sentence, [Docs. 251, 267], be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Movant be **ISSUED** a certificate of appealability on the issue of whether *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010) announced a new rule of criminal procedure that is retroactively applicable to cases on collateral review.

The Clerk is **DIRECTED** to terminate the referral to the undersigned.

**IT IS SO RECOMMENDED and DIRECTED**, this 14th day of June, 2011.

_____

**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/82)